**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL J. BRUTVAN,**

                            **Plaintiff,**

    vs.                                                       **5:12-cv-590
                                                                               (MAD/DEP)**

**CIGNA LIFE INSURANCE COMPANY
OF NEW YORK, CORNELL UNIVERSITY,
AND CORNELL LONG-TERM DISABILITY
PLAN WITH CIGNA,**

                            **Defendants.**
_____

**APPEARANCES:**                                         **OF COUNSEL:**

**MCKAIN LAW, PLLC**                        **CARLA N. MCKAIN, ESQ.**
136 E. State Street
Ithaca, New York 14850
Attorneys for Plaintiff

**WILSON, ELSER, MOSKOWITZ,**        **EMILY A. HAYES, ESQ.**
**EDELMAN & DICKER LLP**              **ABIGAIL RUBIN, ESQ.**
3 Gannett Drive
White Plains, New York 10604
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff Michael J. Brutvan brought this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), for reimbursement of Dependent Social Security Disability ("DSSD") benefits which were offset by Defendant CIGNA Life Insurance Company of New York ("CIGNA") against Plaintiff's long-term disability ("LTD") benefits. *See* Dkt. No. 1. Currently before the Court are the parties' cross-motions for

summary judgment. Dkt. Nos. 22, 23. For the reasons stated herein, Defendants' Motion for Summary Judgment is denied and Plaintiff's Motion for Summary Judgment is granted.

## II. BACKGROUND

Plaintiff is a resident of Ithaca, New York and a former employee of Defendant Cornell University ("Cornell"). *See* Dkt. Nos. 1 at ¶ 4; 23-7 at ¶ 2. Defendant Cornell is the employer sponsor of Defendant Cornell Long Term Disability Benefits Plan (s/h/a Cornell University Long Term Disability Plan with CIGNA) ("Plan") – an employee benefit plan subject to ERISA – which is insured by Defendant CIGNA. *See* Dkt. No. 23-7 at ¶ 6.

Plaintiff was employed by Defendant Cornell until on or about December 23, 2001, at which time he left his employment due to medical issues that later resulted in a multiple sclerosis diagnosis. At the time he left his employment at Cornell, he was covered under the Plan. *See* Dkt. No. 1 at ¶¶ 14-16; CLICNY 0836-70.[1] In July 2002, Plaintiff applied for LTD benefits under the Plan, and on September 25, 2002, Plaintiff was granted LTD benefits retroactive to June 22, 2002. *See* CLICNY 0869-70; CLICNY 0742-43; Dkt. No. 23-7 at ¶ 17.

In August 2002, Plaintiff also applied for Social Security Disability Income ("SSDI") benefits. *See* Dkt. No. 23-7 at ¶¶ 20-21. On February 18, 2004, Plaintiff was awarded SSDI benefits retroactive to December 24, 2001. *See id.* at ¶ 22. At that time, the Administrative Law Judge for the Social Security Administration found that "[b]ecause there is evidence that the claimant may have difficulty in managing his benefits, the undersigned recommends that the component responsible for effectuating this decision determine whether the appointment of a

---

[1] Both parties have placed before the Court excerpts of the administrative record, bearing the prefix CLICNY, in support of their respective motions for summary judgment. *See* Dkt. Nos. 22-7, 23-6. For ease of reference, the Court will cite directly to the administrative record.

2

representative payee is warranted." Dkt. No. 1-1, Ex. B at 5;[2] *see also* CLICNY 0634 ("We have determined that you need help managing your payments. We will be selecting a qualified person to receive your payments. We call this person a representative payee. It will be your payee's duty to manage your Social Security payments for you and use them for your needs."). Thereafter, on April 13, 2004, Plaintiff's minor daughter was awarded DSSD benefits, to be paid to Plaintiff's ex-wife as representative payee for Plaintiff's daughter. *See* Dkt. No. 23-7 at ¶ 23. Plaintiff's daughter was paid retroactively in the amount of $15,906.00 for the period of June 2002 through March 2004 and awarded a prospective payment of $738 per month, beginning in April 2004. *See* CLICNY 0950-52.

## A.     The Plan's Provisions

The Plan defines the "Disability Benefit" for plan participants as "[t]he lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, reduced by any Other Income Benefits. 'Other Income Benefits' means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf." *See* Dkt. No. 1-1, Ex. A at 10. The Plan further defines the Other Income Benefits ("OIB") that may be offset against any LTD benefits payable under the Plan:

> While an Employee is Disabled, he or she may be eligible for benefits from other income sources. If so, the Insurance Company [CIGNA] may reduce the Disability Benefits payable by the amount of such Other Income Benefits. The extent to which Other Income Benefits will reduce any Disability Benefits payable under the Policy is shown in the Schedule of Benefits. Other Income Benefits include:
> . . .

---

[2] Citations to page numbers of documents identified by docket entry number are to the numbered pages on the original document, rather than to the pagination assigned by CM/ECF when a document is filed electronically with the Court.

> 2. a. any Social Security disability benefits the Employee or any
> third party receives (or is assumed to receive*) on the Employee's
> behalf;
>
> . . .
>
> * See the Assumed Receipt of Benefits provision.
>
> . . .
>
> *Assumed Receipt of Benefits*
> The Insurance Company will assume the Employee is receiving
> Other Income Benefits if he or she is eligible to receive them.
> These assumed benefits will be the amount the Insurance Company
> estimates the Employee may be eligible to receive.
>
> . . .
>
> The Insurance Company will not assume receipt of, nor reduce
> benefits by, any elective, actuarially reduced, or early retirement
> benefits under such laws until the Employee actually receives them.

*Id.* at 21-22 ("OIB Provision"). An "Employee" under the Plan is defined as follows: "For eligibility purposes, an Employee is an employee of the Employer in one of the 'Classes of Eligible Employees.' Otherwise, Employee means an employee of the Employer who is insured under the Policy." *Id.* at 30.

The Plan also has a "Survivor Benefit" provision which sets forth the method by which LTD benefits will be paid should the covered employee die while receiving benefits:

> The Insurance Company will pay a Survivor Benefit if an Employee
> dies while Monthly Benefits are payable. . . .
>
> Benefits will be paid to the Employee's Spouse. If there is no
> Spouse, benefits will be paid in equal shares to the Employee's
> surviving Children. If there are no Spouse and no Children,
> benefits will be paid to the Employee's estate.
>
> "Spouse" means an Employee's lawful spouse. "Children" means
> an Employee's unmarried children under age 21 who are chiefly
> dependent upon the Employee for support and maintenance. The
> term includes a stepchild living with the Employee at the time of his
> or her death.

*Id.* at 24.

At the time Plaintiff applied for SSDI benefits in August 2002, he signed a Reimbursement Agreement with Defendant CIGNA which affirmed CIGNA's right to offset

4

certain OIB. *See* CLICNY 0599 ("I understand that under the terms of the STD/LTD policy Benefits may be reduced by any amounts that I or my dependents, if applicable, receive or are assumed to receive including, but not limited to: . . . Social Security disability or retirement benefits"). The Reimbursement Agreement made it so that rather than CIGNA exercising its right under the Plan to immediately offset estimated assumed benefits, Plaintiff could receive full benefits under the Plan, subject to certain conditions, until such time as he actually received those OIB. *See id.* ("I also understand the Insurance Company has the right to immediately reduce benefits by an amount it estimates will be received, but by signing this agreement and complying with its terms the Insurance Company will not reduce my benefits").

**B.     Offset of DSSD Benefits**

In April 2004, Defendant CIGNA calculated that it had overpaid Plaintiff beginning in June 2002 by $1,426 per month for his SSDI benefits,[3] and $713 per month for his daughter's DSSD benefits,[4] for a total overpayment of $44,919. *See* Dkt. No. 23-7 at ¶¶ 27-29. Thereafter, Defendant CIGNA offset Plaintiff's SSDI benefits, as well as Plaintiff's minor daughter's DSSD benefits, against Plaintiff's prospective LTD benefits payable under the Plan. *See id.* at ¶¶ 29-30.

Beginning in or about November 2008, Plaintiff contacted Defendant CIGNA to dispute the offset for his daughter's DSSD benefit payments. CIGNA's representatives informed Plaintiff

---

[3] Plaintiff does not dispute that CIGNA was entitled to reduce his LTD benefits by the amount of SSDI benefits he received.

[4] The record before the Court is unclear as to the precise amount of DSSD benefits that were offset against Plaintiff's LTD benefits. It is undisputed that the amount of overpayment was recalculated several times by CIGNA. *See* Dkt. No. 23-7 at ¶¶ 30-31. Plaintiff's daughter's DSSD benefit payment was $738, but the parties agree that the offset for this benefit was originally calculated at $713 per month. *See* CLICNY 0628-29. The DSSD offset was later calculated at $409 per month. *See* CLICNY 1722-28. The Court need not resolve this issue since the precise amount of the DSSD offset is not relevant to the parties' cross-motions for summary judgment and the issue of damages is not presently before the Court.

5

that they would need documentation showing that his child support payments had not been decreased as a result of his minor daughter's DSSD benefits in order to reverse the offset. *See* CLICNY 0085, 87. Plaintiff then submitted documentation which showed that he did not have access to his daughter's benefits, that her primary residence was with her mother (Plaintiff's ex-wife), and that the amount of Plaintiff's child support payments, which was set by a percentage of his income, had not changed. *See* Dkt. No. 23-7 at ¶ 34; CLICNY 0959-64.

By letter dated December 4, 2008, CIGNA informed Plaintiff that the documentation he had submitted was insufficient: "In order for us to discontinue the deduction of Dependent SSDI from the Disability Benefit, you must provide court documents which document the following: the child or spouse do not share the same primary resident as you, the Dependent SSDI monies are received by the eligible child or spouse at the separate residence, and the Dependent SSDI is being paid above and beyond the prior and current child support agreement or divorce decree[.]" CLICNY 0322-33. On February 3, 2009, Plaintiff wrote Defendant CIGNA through counsel and requested "a sample of the required documentation, along with a policy statement that outlines why the information that has been provided to you by my client is inadequate to discontinue the deduction of Dependent SSDI from his disability benefits." CLICNY 0937. Defendant CIGNA responded to Plaintiff's letter the following day, but did not provide any of requested information: "Unfortunately, we are not attorneys and are unable to provide specifics in this area. . . . Unfortunately, as I understand Mr. Brutvan's situation, his separation was an amicable one where there was no formal support orders, either prior to or after his disability. Because of this I am unsure if there is any way to generate the paperwork we need to justify removing the offset." CLICNY 1315-16. Thereafter, Plaintiff and Defendant CIGNA exchanged additional rounds of fruitless correspondence in March 2009 and June 2011. *See* Dkt. No. 23-7 at ¶¶ 55-56, 59-60.

Plaintiff then appealed the determination to offset his daughter's DSSD benefits by letter dated August 10, 2011, which appeal was denied on September 29, 2011. *See* Dkt. No. 1-1, Exs. I, J. Plaintiff filed the instant action on April 6, 2012, challenging Defendants' determination with respect to the DSSD offset. *See* Dkt. No. 1.

### III. DISCUSSION

**A. Summary Judgment Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the

motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.      Standards of Review Applicable to ERISA Actions**

When considering an ERISA claim alleging improper denial of benefits, the Court must first determine the appropriate standard of review to conduct its analysis of the ERISA plan administrator's decision to deny benefits. In general, a *de novo* standard of review will apply to the plan administrator's determination, unless the plan grants authority to the administrator to use his or her discretion to construe the terms of the plan and determine eligibility for plan benefits. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In *Firestone*, the Supreme Court held that "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan." *Id.*

Under a *de novo* standard of review "the Court will review 'all aspects of [the] administrator's eligibility determination, including fact issues, *de novo*.'" *O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA*, 697 F. Supp. 2d 474, 476 (W.D.N.Y. 2010) (internal quotation marks omitted), *vacated on other grounds*, 642 F.3d 110 (2d Cir. 2011). When a court engages in *de novo* review, plan terms are "given their plain meanings," *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir. 1990), and ambiguities in plan language are to be construed in favor of the claimant, *see Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir. 1991) (citations omitted); *Rudolph v. Joint Industry Bd. of Elec. Industry*, 137 F. Supp. 2d 291, 300 (S.D.N.Y. 2001). Under a *de novo* standard of review, no deference is given to the plan administrator's interpretation of the plan. *See Katzenberg v. First Fortis Life Ins. Co.*, 500 F. Supp. 2d 177, 193-94 (E.D.N.Y. 2007) (citation omitted).

8

Indeed, "the fiduciary must show that the claimant's interpretation is unreasonable and that its own interpretation is the only one that could fairly be placed on the policy." *Rudolph*, 137 F. Supp. 2d at 300 (citing *Alfin, Inc., v. Pacific Ins. Co.*, 735 F. Supp. 115, 119 (S.D.N.Y. 1990)).

If a benefits plan grants the plan administrator discretionary authority to determine eligibility for benefits, however, an arbitrary and capricious standard of review will be applied to the administrator's determination. *See Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249-52 (2d Cir. 1999). Under the arbitrary and capricious standard, a denial of benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* at 249 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)) (other citation omitted); *see also Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104, 107 (2d Cir. 2005). To establish that a plan administrator's decision is supported by "substantial evidence," the decision must be supported by "'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator.]'" *Celardo v. GNY Automobile Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (quoting *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995)). There must be more than a "scintilla" of evidence to support the decision, but there need not be a preponderance of the evidence, provided the evidence relied upon by the administrator is reliable. *See id.*

"'[A] plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate.'" *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 82–83 (2d Cir. 2009) (quoting *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008)). Rather, a "showing that the administrator's conflict of interest affected the choice of a reasonable interpretation is

9

only one of several different considerations that judges must take into account when review[ing] the lawfulness of benefit denials." *Id.* at 83 (alteration in original) (internal quotation marks omitted). "No weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010).

Since the Plan does not contain discretionary language, the parties agree that the *de novo* standard of review should apply here. *See* Dkt. Nos. 22-3 at 9; 23-8 at 10.

## C. The Parties' Positions

### *1. Plaintiff's position*

Plaintiff claims that pursuant to ERISA § 502(a)(1)(B) he "is entitled to recoup all of the DSSD benefits offset by CIGNA against Plaintiff's disability benefits under the Plan, . . ." Dkt. No. 1 at ¶ 56. Plaintiff asserts that the Plan language is clear and unambiguous and only permits the offset of Social Security benefits paid to him (or his representative payee) and does not permit the offset of DSSD payments to his minor daughter, who lives with his ex-wife. In the alternative, Plaintiff contends that Defendants should have reversed the offset based upon the evidence he submitted which showed that (a) his daughter did not live with him; (b) the DSSD payments were paid directly to his ex-wife as representative payee for his daughter; (c) he did not have possession, custody, or control of the DSSD payments; and (d) the DSSD payments did not reduce his child support obligations. Defendants' requirement of court documentation, Plaintiff argues, is unsupported by the Plan language and is therefore an unauthorized interpretation. Plaintiff also argues that, in the event the Court finds the Plan language to be ambiguous, it should be construed against Defendant CIGNA, which drafted the Plan, and the Court should

10

consider certain extrinsic evidence outside the administrative record which supports his interpretation.

### *2. Defendants' position*

First, Defendants argue that the plain language of the Plan provides that CIGNA is entitled to the DSSD offset. Defendants note that the Plan states that Defendant CIGNA may offset "Social Security disability benefits the Employee *or any third party receives . . . on the Employee's behalf*." Since it is undisputed that Plaintiff's minor daughter received the DSSD benefits because Plaintiff was found to be disabled by the Social Security Administration, Defendants observe that she would not have received the benefits otherwise. Thus, Defendants assert that the DSSD benefits were received on Plaintiff's behalf, a position which Defendants contend is supported by the Social Security Administration's regulations. *See* Dkt. No. 22-3 at 10-11. Second, Defendants state that the documentation submitted by Plaintiff was insufficient to show that the DSSD payments did not mitigate Plaintiff's child support payments. *See id.* at 11-13. Last, Defendants contend that the 2002 reimbursement agreement obligates Plaintiff to reimburse CIGNA for Social Security disability benefits received by his dependents. *See id.* at 13.

**D.     Analysis of the Plan Language**

The parties have agreed on nearly all of the facts relevant to this motion. The point of disagreement is whether the Plan language permits the offset of Plaintiff's daughter's DSSD benefits against his LTD benefits. Since the parties agree to the basic facts, the question of whether this ERISA plan allows for a set off for DSSD benefits is a question of law. Thus, to determine the rights of the parties, this Court must look to the contractual language of the Plan.

11

Under ERISA, "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(1)(B) "provides contractual relief to individual beneficiaries." *Dobson v. Hartford Fin. Servs. Group, Inc.*, 389 F.3d 386, 397 (2d Cir. 2004). "In claims under [Section 1132(a)(1)(B), courts] apply federal common law . . . in interpreting the beneficiary's entitlements." *Lifson v. INA Life Ins. Co.,* 333 F.3d 349, 352 (2d Cir. 2003). "[Courts] apply familiar rules of contract interpretation in reading an ERISA plan." *Id.* at 353. "Such familiar canons of contractual interpretation include . . . considering the terms of the contract with an eye toward the entire document so as not to render any provision superfluous or nugatory, . . ." *Huff v. Cruz Contracting Corp.*, 643 F. Supp. 2d 344, 361 (S.D.N.Y. 2009). Courts "interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004) (citations and quotations omitted).

"[U]nambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning. Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578–79 (2d Cir. 2006) (internal quotation marks omitted). "Where contract language is ambiguous, summary judgment is not appropriate," except that "a court may look to extrinsic evidence to resolve ambiguity in an ERISA plan, but only when the extrinsic evidence is itself unambiguous." *Eastman Kodak Co. v. Bayer Corp.*, 576 F. Supp. 2d 548, 550 & n.2 (S.D.N.Y. 2008), *aff'd sub nom. Eastman Kodak Co. v. STWB Inc.*, No. 08–4722, 344 Fed. Appx. 702 (2d

Cir. 2009). "Whether language is ambiguous is a question of law to be resolved by reference to the contract alone." *Id.* at 551.

If there are ambiguities in an ERISA plan, they are to be construed against the insurer, which is a "hornbook rule of contract interpretation . . . incorporated into the federal common law governing ERISA-regulated plans . . . ." *Critchlow*, 378 F.3d at 256; *see also Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001) (noting that "the *contra proferentem* does not come into play unless [the] court first determines that the contract is, in fact, ambiguous").

With these considerations in mind, the Court turns to the Plan language. It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence. *See United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991). The Court finds as a matter of law that the Plan language at issue manifests a plain and unambiguous intent to provide LTD benefits without offsets for DSSD.

The Plan language in the OIB Provision is explicit in providing for each kind of offset. Specifically, the OIB Provision provides that CIGNA may reduce LTD benefits payable under the Plan in the amount of "any Social Security disability benefits the Employee or any third party receives . . . on the Employee's behalf." It makes no reference to the Employee's family, spouse, children, or dependents. The Plan defines "Employee" but does not otherwise define or elaborate upon what is meant by the phrase "the Employee or any third party receives . . . on the Employee's behalf." On their face, these words mean benefits the Employee *or someone on the Employee's behalf receives*. They do not mean benefits which the Employee *or his dependents receive*. The Court interprets the Plan language as it is used in the ordinary sense. Benefits received on behalf of the employee are those benefits belonging to the employee, paid to another

as his agent or representative. *See* Oxford English Dictionary Online (3d ed. 2012) ("behalf, n. 1. on behalf of: . . . c. On the part of (another), in the name of, as the agent or representative of, on account of, for, instead of. (With the notion of official agency.)").

If Defendant CIGNA had intended for DSSD benefits to be offset against LTD benefits, it could have done so, but it did not. "It is a simple task of draftmanship to specify which offsets are applicable in any particular plan." *In re Unisys Corp. Long-Term Disability Plan ERISA Litigation*, 97 F.3d 710, 715 (3d Cir. 1996). Not only does the Plan language fail to specify that DSSD payments to Plaintiff's family may be offset against his LTD benefits, its explicit mention of offsets for SSDI benefits that he (or a third party on his behalf) receives creates the impression that this silence was intentional. Therefore, the Court declines to look for outside evidence of Plan terms. *See, e.g.*, *W.W.W. Assoc., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing").

This interpretation is consistent with the language used throughout the Plan. For example, "Employee" means the participant, and when spouses and dependent children are discussed, as in the Survivor Benefits provision, the reference is explicit. *See* Dkt. No. 1-1, Ex. A at 24 ("'Spouse' means an Employee's lawful spouse. 'Children' means an Employee's unmarried children under age 21 who are chiefly dependent upon the Employee for support and maintenance. The term includes a stepchild living with the Employee at the time of his or her death."). In addition, the Plan's Schedule of Benefits defines OIB as "any benefits listed in the Other Income Benefits Provision that an Employee *receives on his or her own behalf*."

Defendants argue that Plaintiff's daughter would not have received the DSSD benefits 'but for' Plaintiff's disability and, therefore, those benefits were received on Plaintiff's behalf.

14

As discussed above, the Plan language and common sense do not support such an interpretation. Moreover, there are two types of Social Security disability benefits at issue here – those awarded directly to the disabled person (SSDI) and those awarded to the disabled person's dependents (DSSD). Dependents are granted their benefits directly by statute, which provides that they "shall be entitled" as individuals in their own right to such benefits. *See* 42 U.S.C. § 402(b), (d). These payments are the property of the dependent and cannot be said to be received on the disabled's behalf.

Defendants further contend that such an interpretation would render superfluous the phase "or any third party receives . . . on the Employee's behalf." But this language, on its face, is clearly intended to address the not uncommon situation where, as here, SSDI payments are made to a representative payee (a third party) on behalf of the disabled individual. Indeed, Plaintiff has not contested CIGNA's right to offset his own SSDI payments, even though the record indicates that those payments (at least initially) were made to a third-party. Thus, the Court's interpretation of the Plan language would not render the "third party" provision meaningless.

In *In re Unisys Corp. Long-Term Disability Plan ERISA Litigation*, the Third Circuit held that a plan must specify which benefits are to be considered in an offset provision. *See In re Unisys Corp. Long-Term Disability Plan ERISA Litigation*, 97 F.3d 710 (3d Cir. 1996). In *Unisys*, the defendant drafted a LTD plan which provided that benefits received by employees could be adjusted if the employees received pension benefits from other sources. After the original publication of the plan, the plan was revised to state that benefits were subject to reduction by amounts of any dependents' Social Security awards. The plaintiffs, employee participants of the plan, argued that only benefits they themselves received should be deducted from plan benefits. Defendants argued that this new language expressed a continuation, rather

15

than a change of an existing provision. The district court granted summary judgment in the defendants' favor. On appeal, the Third Circuit examined the language of the plan, reversed the district court, and concluded, "[t]here is no evidence in the record which supports Unisys' argument that the words 'benefits you receive' are susceptible of the meaning 'benefits you and your dependents receive.'" *Id.* at 715.

> Thus we have concluded as a matter of law that the language of the Income From Other Sources provision of the Unisys LTD Plan is unambiguous. It provides that the benefits which a participant receives may be adjusted for disability benefits which the participant himself receives from other sources, such as Social Security. It does not provide for adjustments for disability benefits which a participant's dependents receive from other sources.

*Id.* at 717. Although not binding on this Court, the Court finds *Unisys* persuasive, as it deals with similar language to the Plan at issue here.

Defendants rely on *Fortune v. Group Long Term Disability Plan for Employees of Keyspan Corp., et al.*, 391 Fed. Appx.. 74 (2d Cir. 2010), and other cases where courts have found DSSD offsets to be permissible. However, the relevant plan language in *Fortune*, and each of the cases in which a court has found DSSD payments appropriately offset against LTD benefits, expressly stated that Social Security benefits paid to the plan participant's family would be subject to such an offset. *See, e.g.*, *Fortune,* 391 Fed. Appx. at 79 (noting that OIB was defined to include "disability benefits under: (a) the United States Social Security Act . . . that you, your spouse and children are eligible to receive because of your Disability") (alteration in original); *Hampton v. Dana Corp.*, 152 Fed. Appx 441, 442 (6th Cir. 2005) ("[P]lan provided that monthly benefits would be reduced by 'the amount of any Primary and Family Social Security Benefits for which the Employee is . . . eligible.'") (footnote omitted) (alteration in original); *Rellou v. JP Morgan Chase Long-Term Disability Plan, et al.*, No. 07-1334, 2009 WL 3151230,

16

*1 (S.D.N.Y. Sept. 30, 2009), *aff'd*, 439 Fed. Appx. 21 (2d Cir. 2011) (observing that ERISA plan stated that plan administrator "will subtract from your gross disability payment . . . [t]he amount that you, your spouse and your children receive as disability payments because of your disability under . . . the United States Social Security Act") (alteration in original); *Schultz v. Aviall, Inc. Long Term Disability Plan, et al.*, 790 F. Supp. 2d 697, 701, 705 (N.D. Ill. 2011), *aff'd*, 670 F.3d 834 (7th Cir. 2012) (finding that the respective plans allowed for deductible sources of income including "[t]he amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under . . . the United States Social Security Act" and amounts "payable to you or your spouse or children based on your work and earnings" including "benefits payable under or by reason of . . . [t]he United States Social Security Act as amended from time to time [but not] benefits paid to your former spouse or to your child living with such spouse"); *Mayhew v. Hartford Life and Accident Ins. Co., et al.*, 822 F. Supp. 2d 1028, 1034-35 (N.D. Cal. 2011) (noting that OIB was defined to include "disability benefits under the United States Social Security Act . . . or similar plan or act that, your spouse and children are eligible to receive because of your Disability"); *Pennell v. The Hartford Life and Accident Ins. Co.*, No. 09-485, 2010 WL 330259, *5 (N.D. Ohio Jan. 21, 2010) (allowing offset where OIB was defined as "the amount of any benefit for loss of income, provided to you or your family, as result of the period of Disability for which you are claiming benefits under this plan," including Social Security benefits). The Plan at issue here contains no such explicit language.[5]

---

[5] Although the Reimbursement Agreement did refer to payments received by Plaintiff's dependents, the Court finds that the Reimbursement Agreement did not substantively alter the terms of the Plan, specifically with respect to the OIB Provision. Rather, the Reimbursement Agreement reaffirmed CIGNA's offset rights pursuant to the Plan and obligated Plaintiff to reimburse CIGNA for any overpayment of LTD benefits based upon the offsets outlined in the

Finally, since the Court finds the Plan language to be unambiguous as a matter of law, it need not reach the parties' remaining contentions with respect to, *inter alia*, the sufficiency of the documentation provided by Plaintiff in support of his appeal, the import of any extrinsic evidence in support of their respective interpretations, whether the Court may consider evidence outside the administrative record, or the propriety of Defendants' use of Social Security regulations in justifying its determination.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the parties' counsel shall be available for a telephone conference on Friday, October 18, 2013 at 10:00.am. to discuss setting a trial date on the issue of damages and attorney's fees. Defendants' counsel shall initiate the call using a professional teleconferencing service; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 27, 2013
      Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge

---

Plan's OIB Provision.